## MARY TEWKSBURY v. JOSEPH M. FRENCH.

*Testator's intent—Construction of devise.*

A testator's intent is to be determined from the whole will which is to be given effect as far as it may lawfully be done.

A man devised to one of his daughters the s. $\frac{3}{4}$ of the s. $\frac{1}{2}$ of the s. $\frac{1}{4}$ of a specified quarter section, and farther described it as containing 15 acres and as being 15 rods wide by 160 long. There was a similar devise to another daughter, and another was to have a strip 12$\frac{1}{2}$ rods wide and containing 12$\frac{1}{2}$ acres. There were three remaining daughters who were to receive the residue share and share alike. The actual quantity in each of the first devises, according to the first clause in the descriptions, would be 30 acres, but if they were con-

strued as giving 30 acres each, there would have been no residue for the last three devises. *Held*, that they covered only 15 acres.

A clause in a will described certain property as "being the same land on which the said Sidney Tewksbury now lives." *It seems* that such a description does not necessarily cover the entire tract within the enclosure.

Error to Wayne. Submitted April 28 and 29. Decided June 23.

EJECTMENT. Plaintiff brings error. Affirmed.

*Fraser & Gates* for plaintiff in error.

*Wm. H. Wells* and *Ashley Pond* for defendant in error.

MARSTON, C. J. Plaintiff brought ejectment to recover possession of certain real estate, and her right to recover depends upon the construction to be given the second clause of the will of George Young, deceased, through whom she claims title. If under the clause but fifteen acres were devised to her, then she is not entitled to recover, while if thirty acres were devised she would be entitled to a verdict and judgment.

George Young, being the owner of a certain tract of land containing one hundred or one hundred and two and one-half acres of land, made certain specific bequests of portions thereof to certain of his children, and to three other of his children all the rest and residue of his real estate, share and share alike. Besides the above land he owned none other.

In three of the specific bequests he described the land according to the government subdivisions; he also described it by metes and bounds, giving the frontage of each piece on a certain road, and the depth of each parcel, and the number of acres therein contained. These descriptions did not harmonize. If the number of acres given, and the number of rods frontage and the depth were to govern, and in these respects there was no conflict, then plaintiff must fail.

That portion of the will under which plaintiff claimed was as follows:

"2d. I give and devise to my daughter, Mary Tewksbury, wife of Sidney Tewksbury, for and during her natural life, with the remainder to her heirs forever, in fee-simple, the south three-quarters of the south half of the south half of quarter section lot number seventeen, in the ten thousand acre tract, so-called, situate in the said township of Hamtramck, containing fifteen acres of land, and being bounded westerly by the road running from the city of Detroit to Pontiac, known as the Pontiac turnpike, being fifteen rods wide on said turnpike, running back eastwardly of the same width one hundred and sixty rods and being the same land on which said Sidney Tewksbury now lives."

The south three-quarters of the south half of the south half of quarter section seventeen contained thirty acres, and plaintiff claims this description must govern and control what follows, in accordance with the well-established rule of construction that prominent monuments control.

The general rule undoubtedly is that in the construction of the description of lands contained in a deed, known monuments control courses and distances, and the reason given for this rule is that "ordinarily, surveys are so loosely made, instruments so liable to be out of order, and admeasurements, especially in rough or uneven land or forests, so liable to be inaccurate, that the courses and distances given in a deed are regarded as more or less uncertain, and always give place, in questions of doubt or discrepancy, to known monuments and boundaries that are referred to in the deed as indicating and identifying the land." 3 Washburn on Real Pr. 631. In some cases where accurate measurements had evidently been made, great confidence was placed therein as a means of ascertaining what was intended to be conveyed. Id.

Another rule given is that "where more than one description is given, and there is a discrepancy, that description will be adhered to as to which there is the least likelihood that a mistake could be committed, and that be rejected in regard to which mistakes are more apt to be made." Id.; 1 Greenleaf on Ev. § 301, note, and cases cited. Indeed all rules on the subject are but aids to assist in arriving at the expressed intention of the parties, which, when ascertained, is to be

carried out. "To determine this we must look at the whole will and give it effect according to its intent, as far as that can be done lawfully." *Toms v. Williams* 41 Mich. 565; *Jameson et al., appellants etc.* 1 Mich. 99; *Kinney v. Kinney* 34 Mich. 254; *Jones v. Jones* 25 Mich. 401.

It is very evident that where there is a fixed, permanent monument, as a river, lake or highway, or one established by the parties, that while a mistake may occur as to the course or distance or the quantity of land, there could not well be as to the visible monument, or the lands intended to be conveyed. The land and the fixed, permanent monument are visible to the parties; they can see what their minds have agreed upon, and what is to be described by words in their conveyance. In giving such a description by mentioning the monuments, there is but slight chance for mistake; and yet, no matter how clearly the monuments may be described, if courses or distances or number of acres are attempted to be given, mistakes may much more readily occur.

So also the descriptions of lands by sections and subdivisions thereof are ordinarily well known, and mistakes could not be likely to occur where parties had adopted and used such a description. Where, however, the parties attempt, as in this case, to describe a small part of an entire parcel, very great care must be exercised to avoid mistakes. Any attempt to so subdivide a quarter section of land as to correctly describe fifteen acres from off one of the sides thereof would require a very deliberate use of terms, and could not be done in haste or without careful computation. In the absence thereof, it may safely be said that a mistake would almost inevitably occur.

It appears that the lands owned by the testator had a frontage of one hundred rods on the Pontiac road, and that the lot was one hundred and sixty rods deep. Each rod fronts on the Pontiac road, and running back the same width the full depth of the farm, would contain one acre. This seems to have been well known to the testator, as clearly appears from the same and other clauses in the will. Thus,

the tract he has attempted to describe he says contains fifteen acres of land, being fifteen rods wide on said turnpike, and running back eastwardly of the same width one hundred and sixty rods. In the fifth subdivision of the will he gives to his daughter Sarah Ann twelve and one-half acres, lying next north of a certain other parcel, "to be twelve and one-half rods wide fronting on the Pontiac turnpike, and running back the depth of the said quarter section seventeen."

It seems quite clear to my mind that the testator, in giving the number of acres with a frontage and depth corresponding thereto, was much less likely to make a mistake than in his attempt to follow the governmental subdivisions.

Again, if we give each of the specific bequests to the devisees named in accordance with the first description, the entire real estate of the testator will have been disposed of, leaving nothing for Eliza, Adelaide and Ellen; while if we follow the number of acres, to each of these three will be given a share equal to that of Sarah Ann.

It appears that thus far we have given no effect to that clause which speaks of this as "being the same land on which said Sidney Tewksbury now lives." Evidence was introduced tending to show that Sidney Tewksbury then lived upon and cultivated the front part of the thirty acres. Admitting this, the clause is equally applicable to a devise of but fifteen acres. A devise of fifteen acres would be the same land, but not the whole thereof. Besides, it clearly appears that the house in which Tewksbury lived was upon the fifteen acre parcel; and under the evidence it might be a matter of some considerable doubt whether it could fairly be said that Tewksbury was living upon the thirty acre tract. Certainly, a part thereof was not and never had been in his possession, either actual or constructive.

I am of opinion that no error was committed and that the judgment should be affirmed with costs, and the record remanded for farther proceedings under the statute.

GRAVES and COOLEY, JJ. concurred.

CAMPBELL, J. dissenting.   Plaintiff sued in ejectment for a parcel of fifteen acres, as devisee under the will of her father George Young, being on lot or quarter section seventeen of what is known as the ten thousand acre tract, north of Detroit.   Mr Young owned originally the whole lot, which contained nominally one hundred and sixty acres, but really about one hundred and sixty-two and one-half.   He also owned all or a part of lot twenty-four, immediately south of seventeen, of which he retained absolutely a strip six feet wide next to seventeen, and held the fee of twenty acres south of that, sold under contract to one Whiting, and not fully paid for.

The dispute in this case is whether the devise to plaintiff covered fifteen or thirty acres, and it arose under these circumstances:   The devise purported to cover the south ¾ of the south half of the south half of quarter section lot number seventeen, in the ten thousand acre tract, so called, situate in the township of Hamtramck, containing fifteen acres of land, and being bounded westerly by the road running from the city of Detroit to Pontiac, known as the Pontiac turnpike, being fifteen rods wide on said turnpike, running back eastwardly of the same width one hundred and sixty rods, and being the same land on which Sidney Tewksbury now lives.   It then described further the 6-feet wide parcel before referred to, between this and Whiting.

The south ¾ of the south ½ of the south ¼ would contain thirty acres and not fifteen.   The description therefore contains some element which is incorrect.   The question is what is the wrong element?

There can be no doubt that plaintiff's land is in the extreme south of the lot.   If governed by the number of acres expressed and the width and depth, it would contain fifteen acres.   If by the subdivisions of the tract, it contains thirty acres.   Sidney Tewksbury's occupation covering the front of the whole thirty acres might possibly under the testimony, which is conflicting on that point, be reconciled with either.

The chief reasons for disputing the claim for thirty acres

are found in the supposed fact that under that construction
some devises would fail.  That theory is based on the fact
that in the same will testator under precisely similar descrip-
tions which by metes and bounds would cover only half of
their contents ·as regular subdivisions, made three devises,
which in the larger sense would just exhaust the land on lot
seventeen, while in the smaller sense they would leave forty
acres not devised in specific parcels, but left as a residue to
three daughters, or the survivor of them, in common.  The
specific devises were to Elizabeth Tewksbury the same amount
as to Mary—that is, either fifteen or thirty acres ; to Peter
Young either twenty or thirty acres ; and to Sarah Ann
Young twelve and one-half acres exactly.  The residuary
devise was " to my daughters Eliza Young, Adelaide Young,
and Ellen Young, or such of them as may be alive at the
time of my death, all the rest and residue of my real estate,
share and share alike."

There was extrinsic evidence admitted on the trial tending
to show that testator was not known to have other lands, and
also concerning Sidney Tewksbury's holding.  The circuit
court took the case from the jury, and ordered a verdict for
defendant.  This could only have been done on the theory
that the will itself required it.

I am myself disposed to think that there is no room for
extrinsic evidence beyond, perhaps, Sidney Tewksbury's pos-
session, which amounts to very little one way or the other,
and the location of the narrow strip on the south.

But my view of the will is different from that of the cir-
cuit court.

If testator by clear and plain words disposed of all of lot
seventeen to Mary, Elizabeth, Sarah and Peter Young, the
fact that he gave the residue of his land to his three younger
daughters could not disturb the other devises.  This would
be so even if he spoke of a residue in that lot.  But he in
no way indicates in his will whether he had other lands than
these or not.  I do not see how that fact can come in issue
here.  He does not attempt to give his three children any
interest in this particular property.  I think it strange, if he

meant to do so, that he did not say so. It is the more strange because in every other instance he gave specific parcels in severalty, and if he meant to convey an interest in these lands there is no reason given and none very intelligible why he left these shares in common. If it should turn out that he had other lands, here or elsewhere, their shares would absorb it; and they unquestionably took the title to the Whiting lands subject to his contract.

My reasons for construing the will as conveying to plaintiff thirty acres may be stated briefly. In the first place the subdivision of such lots into equal halves, quarters and subdivisions of quarters is one of the most familiar methods used by all land owners, and the one least likely to be misunderstood. There are very few government subdivisions strictly accurate in lines or dimensions. But the tracts themselves are dealt with constantly by name. The tract belonging to Whiting, which is referred to in the will, was sold correctly as the north half of the north half of the north half of lot twenty-four, and as containing twenty acres, but incorrectly as being one-fourth of the lot. The use of these terms was evidently familiar to estator. But however this may be, he used the terms, and in such a way as to render some of his devises utterly void unless used literally.

The meaning of the will can only be got at by reading it as a whole. And doing so the necessity of giving force to these terms is manifest.

As already stated, the divisions named as plaintiff's contain thirty acres. Her devise is followed by one to Elizabeth. That also gives the latter a description by subdivision, containing thirty acres. But if Mary and she each take but fifteen then Elizabeth's land lies entirely outside of the description given it, and can only be identified by bounding on Mary's, and containing fifteen acres, fifteen rods wide and one hundred and sixty deep.

The next description is Peter Young's. That on defendant's theory is utterly incapable of identification. It purports to be the north half of the north half of the south half, and ten acres in addition to the northward, but no other

description is given except that the whole contains twenty acres. Now the first parcel contains twenty acres, and would throw the second into the north half of the lot seventeen. But if the first tract is not all conveyed, no boundary or starting point can be found, and an arbitrary selection must be made or it must fail. It might be the north part or south part, or any other part, equally well. If Mary and Elizabeth each took thirty acres, the whole is harmonious, because then their lands and his join. If not, there is no gift of a strip of thirty acres between Elizabeth and the north quarter of the south half lot, and an uncertainty what part of that north quarter goes to Peter.

But this is not all. Sarah Ann has an exact $12\frac{1}{2}$ acres " lying next north of the land last above devised to my son Peter." If Peter's description is not located definitely by the will, Sarah's fails also.

Under the construction which takes the subdivisions as controlling, all the land goes to devisees named, and without difficulty. Under any other, only two devises can be located at all.

As already said, the will does not assert that testator supposed he was giving his three youngest daughters any share in this specific land, and if he did there was no reason why their shares were not made specific like all the rest. There are other considerations which might be suggested, but I do not think it necessary to dwell on them.

I think the construction which I have indicated and which is claimed by plaintiff, is not only the most natural one in accord with common usage, but the only one which can save the other devises, or prevent the will from substantially failing in its purpose.

I think the plaintiff should have judgment.