GRANGER *v.* DURYEA.

1. WILLS—CONSTRUCTION—INTENT.

In the construction of a will the intent of the testator should be gathered if possible from the entire instrument.

2. SAME—DISTRIBUTION—PER CAPITA.

Where a will provided that, after the death of certain of testatrix's children and the execution of a special trust to a son, all of the remainder of her estate should be divided "between those of my grandchildren as shall then be living, and the issue of each of the grandchildren as shall then have died and left issue them surviving," the final distribution of the estate should be made *per capita* among the grandchildren surviving at the time designated.

Appeal from Wayne; Richter (Theodore J.), J. Submitted April 20, 1922. (Docket No. 82.) Decided June 5, 1922.

Bill by Harriet W. Granger, executrix of the last will of Stanley R. Granger, deceased, and others against John L. Duryea and others for a construction of the last will of Mary J. Granger, deceased. From a decree for defendants, plaintiffs appeal. Affirmed.

*James Swan* and *Edward G. Wasey*, for plaintiffs.

*Rood & Visscher, William R. Grover, George W. Barrus,* and *James H. McDonald,* for defendants.

MOORE, J. The bill of complaint was filed in this case on November 10, 1920, for the purpose of obtaining the construction of a will left by Mary J. Granger, deceased. Mrs. Granger died May 30, 1892. Her will was duly probated. One witness was sworn who testified in substance as follows:

"Mary J. Granger was my grandmother. She died

On gift to persons not designated by name but by general description, and as being living at a certain time prior to testator's decease, as a gift to individuals or to a class, see note in 34 L. R. A. (N. S.) 945.

On, the question as to whether division is *per stirpes* or *per capita* under a gift to issue, see notes in 2 A. L. R. 963; 5 A. L. R. 195.

On the question of taking *per stirpes* or *per capita* under will, see note in 16 A. L. R. 15.

on the 30th day of May, 1892, leaving certain property in the city of Detroit, the assessed valuation of which was $29,150. At the time of her death she left the following heirs: Sarah J. Granger, a daughter, 44 years of age at the time of her mother's death, who died March 9, 1920; Joseph W. Granger, a son 41 years of age at the time of his mother's death, who died October 9, 1897; John H. Granger, a son, at the time of his mother's death 54 years of age, who died May 8, 1896; Emily Lawson Knight and Joseph G. Lawson, children of her deceased daughter, Nancy Lawson Hunt, who died January 1, 1884; Joseph N. Duryea, John L. Duryea, Nellie Duryea, Ida Duryea Tobin and Sarah Warren, all children of her daughter Mary P. Duryea, who died April 17, 1890. Ida Duryea Tobin died after her grandmother about the year 1915, married, leaving a husband and no issue.

"*Q.* Do you know whether or not your grandmother had any reason to favor any of her grandchildren more than another?

"*A.* I know of no such reason."

Certain documentary proof was introduced in evidence.

A decree was entered dividing the property *per capita* among the grandchildren. The case is brought here by appeal.

It is agreed that the only question is whether the distribution of the property should be *per capita* or *per stirpes.* The appellants claim it should be *per stirpes.*

The provisions of the will calling for consideration read:

"*Third:* Out of the cash or securities which I shall have in bank or elsewhere, I direct my executors to pay over to Andrew McLellan, banker of Detroit, Michigan, and to said Sarah J. Granger the sum of two thousand dollars, to be held by them in trust for the uses of my son John to wit:

"(1) To care for him in case of severe illness, when he may in their opinion need more than the monthly allowance herein provided to be paid to him; (2) to defray the expense of transportation of his remains to Detroit, if he should die away from here, and his

funeral expenses generally and (3) to pay for a head-stone to his grave and (4) to pay the residue if any, at his death into my general estate. I further direct my said trustees that they may pay the income from said fund to him annually, or to allow it to accumulate as they may from time to time think best. * * *

"*Fifth:* All the rest and residue of my estate including the reversion of the real estate on · Adams Ave. W., hereinbefore given to my daughter for life, I give, will and devise to the said Andrew McLellan and Sarah J. Granger in trust only for the uses and purposes herein named, to-wit: * * * (2) Out of the net income of my said estate to pay to my eldest son, John H. Granger, the sum of forty dollars per month on the last day of each and every month for his support so long as he shall live.

"(3) The remainder of the income from said estate I direct to be divided into four equal parts and one fourth thereof paid to Joseph W. Granger or his issue, one fourth to Sarah J. Granger or her issue, one fourth to the children of my daughter Nancy E. Lawson Hunt, and their issue, and one fourth to the children of my daughter Mary P. Duryea, and their issue, the payments to my children being made quarter yearly and those to my grandchildren or their issue at such times, and in such amounts and manner as shall seem to my trustees best calculated to induce, aid and enforce in them respectfully habits of industry, economy and thrift.

"(4) After the death of my children, Joseph W. Granger and Sarah J. Granger to divide all of my estate, except the special trust for John of $2,000 and the fund hereinafter named for him, if he then be living and the cemetery lot fund, or the proceeds from the sale of the same as my trustees may think best for my legatees hereunder, between those of my grandchildren as shall then be living and the issue of such of the grandchildren as shall then have died and left issue them surviving. But if my son John H. shall survive my other children, a sufficient portion of said estate shall be held by my trustees for the purpose of producing a clear regular income as provided for in paragraph two of this article."

It is a cardinal rule in the construction of wills that

the intent of the testator should be gathered if possible from the entire instrument. *Tewksbury* v. *French,* 44 Mich. 100; *Cummings* v. *Corey,* 58 Mich. 494; *Wales* v. *Templeton,* 83 Mich. 177; *Thurber* v. *Battey,* 105 Mich. 718; *Gregory* v. *Tompkins,* 132 Mich. 205; *In re Ives' Estate,* 182 Mich. 699; *In re Blodgett's Estate,* 197 Mich. 455.

The appellants urge if this rule is followed that the distribution should be *per stirpes* and they lay great stress upon the provision relating to the distribution of the income of the estate.

The court below decreed that it was the intention of said testatrix to divide the principal of her estate equally, share and share alike, among the grandchildren surviving at the death of the said Sarah J. Granger. If the decree of the lower court is sustained, each of the grandchildren will take an undivided one-eighth of said estate. If the contention of the appellants is sustained, and the grandchildren should take *per stirpes,* Emily Lawson Knight, Joseph G. Lawson, Frank Granger and Stanley R. Granger would each take one-sixth of said estate, and the four Duryea heirs, viz., John L. Duryea, Nellie Duryea Barry, Sarah Duryea Warren, Joseph H. Duryea or his assignee, would each take one-twelfth of said estate. There is nothing in the record to indicate that Mrs. Granger held some of her grandchildren in higher esteem than she did the others, or that she desired to provide more liberally for them.

The language of the will is that, after the death of Mrs. Granger's children, Joseph W. and Sarah J., and the execution of the special trust to her son, John H., all of the remainder of her estate shall be divided "between those of my grandchildren as shall then be living, and the issue of each of the grandchildren as shall then have died and left issue them surviving."

This language is not ambiguous and clearly in-

dicates that Mrs. Granger desired the final distribution of her estate to be made *per capita*. We think the instant case is quite readily distinguishable from *Eyer* v. *Beck*, 70 Mich. 179, cited by counsel for appellants, as appears by the following language of Justice CAMPBELL:

"But it seems to us also that the will is not ambiguous in its language, and is only made so by importing into it a forced and unnatural doctrine which the testator probably never heard of. The laws of inheritance are generally understood by intelligent people. It is understood that when there are children and grandchildren to take, the grandchildren by one child take in the aggregate only that child's portion. In our judgment this idea is clearly expressed in the will. The testator directs that the property shall be equally divided among his 'heirs.' He then goes on to name them, and in so doing gives the name of each child, but not of any grandchild. Those he describes only as 'the children of Christian Beck, Jr., deceased.' Coming as this does in the description of the heirs, we think it evidently means that those children together represent one heir. That is in harmony with the statute of distributions, and is at least quite as natural a meaning as the other, and is to be preferred for that reason, as conforming to our general policy.

"As already suggested, any language which distinctly indicated a preference for the three grandchildren over other grandchildren should have due weight. But there is no such language. In spite of the leaning of some of the outside decisions to the contrary, we think there is significance in grouping without naming them."

The instant case is more like *Wells* v. *Hutton*, 77 Mich. 129; *Van Gallow* v. *Brandt*, 168 Mich. 642; *Colby* v. *Wortley*, 205 Mich. 609.

We think the chancellor reached a right conclusion. The decree is affirmed, with costs to the appellees.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.