GRAND RAPIDS TRUST CO. *v.* HERBST.

1. APPEAL AND ERROR—WILLS—EXECUTORS AND ADMINISTRATORS—RIGHT TO FILE BRIEF ALTHOUGH NOT APPEALING.

In proceedings by the executors for the construction of a will, on appeal from the decree of the court below holding it void in part, the executors, although not appealing, had a right to file a brief contending that the decree should be reversed and the will sustained.

220—Mich.—21.

2. PERPETUITIES—RULE AGAINST, A COMMAND OF LAW.

The rule against perpetuities is not a rule of construction, but a peremptory command of law.

3. SAME—WILLS—INTENT.

A will which plainly indicates an intent of the testator to dispose of his estate burdened with conditions and limitations suspending the power of alienation beyond the limit prescribed by the statute against perpetuities (3 Comp. Laws 1915, §§ 11532, 11533) is void.

4. SAME—TRUST EXTENDING BEYOND TWO LIVES IN BEING.

In so far as a will created a trust which included seven lives of two generations of beneficiaries whose several interests were not assignable, thereby suspending the power of alienation beyond two lives in being in violation of the statute against perpetuities, it was properly held void by the court below.

5. SAME—TRUSTS—ANNUITIES.

Provisions in a will for the executors to pay to a nephew and two nieces for their natural lives certain monthly payments, to divide the "remainder of the net income" equally among testator's son, brother, and two sisters, or their survivors, and giving the executors power to sell, mortgage, and convey "said trust estate" *held*, to create a trust of the nature prohibited by the statute against perpetuities rather than providing "annuities" as contended by counsel.

6. SAME—"ANNUITY"—DEFINITION—"INCOME."

An "annuity" is a yearly payment of a certain sum of money granted to another in fee for life or years, charging the person of the grantor only, and is distinguished from an "income" by the latter being interest or profits to be earned.

7. SAME—WILLS—TRUSTS.

No express words creating a trust are requisite, if testator's intent to devote the estate to a particular purpose is apparent from the terms of the will.

8. SAME—REAL PROPERTY.

The statute against perpetuities in this State relates to real property.

9. SAME.

Where by will the income from both real and personal property was left to six beneficiaries with the right of

survivorship, and under 3 Comp. Laws 1915, § 11583, they are prohibited from disposing of their interest in the real estate, and therefore it could not be relieved of said burden until the last life beneficiary is dead, the will is void under the statute against perpetuities.

10. SAME—TRUSTS—POWER TO ALIENATE.

Where a trust created by a will extended beyond the period of two lives in being, the perpetuity existed and the will was void notwithstanding the executors had the power in their discretion to sell, mortgage, and convey any and all of the estate for the purpose of carrying out the provisions of the trust.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J.   Submitted January 12, 1922. (Docket No. 2.)   Decided November 2, 1922.   Rehearing denied December 29, 1922.

Bill by the Grand Rapids Trust Company and another, executors of the last will of Charles W. Carman, deceased, against John Carman Herbst and another for the construction of said will.   From a decree declaring the will in part void, certain defendants appeal. Affirmed.

*Knappen, Uhl & Bryant,* for plaintiffs.

*Butterfield, Keeney & Amberg,* for defendant George G. Carman, appellee.

*Charles B. Blair* (*Cavanaugh & Burke,* of counsel), for appellants.

STEERE, J.   Charles W. Carman died testate at Grand Rapids, Michigan, on September 19, 1919, survived by a minor son, George Gay Carman, a brother, George N. Carman, two sisters, Mary A. Carman and Georgia C. Herbst, two nephews, John and Raymond Herbst, and a niece, Bertha C. Herbst.   His estate valued at upwards of $200,000 consisted of personal and real estate located in the States of Michigan, Illinois and Washington, and the province of Alberta,

Canada.    His executors filed this bill for a construction of his will and directions as to their duties in that connection.

It provides as follows:

"1. I direct my executors hereinafter named to pay all lawful debts that may exist against me at my decease, including the expenses of my last sickness and burial, and the settlement of my estate.    I also direct my executors, in case I have not done so, to erect a suitable monument on the lot now owned by me in Oak Hill cemetery, in which I wish to be buried beside my deceased wife.

"2. I give and bequeath to Robert Arthur Mowat, of Chicago, Illinois, who for many years has been my faithful accountant and assistant business manager of my Canadian interests, the sum of one thousand dollars ($1,000.00).

"3. I direct that the sum of seventy-five ($75.00) dollars per month be paid to my nephew, John Carman Herbst, during his natural lifetime.

"4. I direct that the sum of seventy-five ($75.00) dollars per month be paid to my nephew, Raymond Carman Herbst, during his natural lifetime.

"5. I direct that the sum of seventy-five ($75.00) dollars per month be paid to my niece, Bertha Carman Herbst, during her natural lifetime.

"6. I direct that the remainder of the net income from my estate be divided equally between my son, George Gay Carman, my brother, George Noble Carman, my sister, Mary A. Carman, and my sister, Georgia Carman Herbst.

"In case of the death of any one of the persons named in this clause of my will before my said son becomes twenty-five years of age, then the said income shall be divided equally between the survivors.

"7. If my said son lives to be twenty-five (25) years of age then I give, devise and bequeath to him (1) one-half of all my estate, to have and to hold the same to him, his heirs and assigns forever, and (2) the remaining one-half thereof, but charged with the payment to my brother and sisters and my nephews and niece of the bequests above mentioned, that is to say seventy-five ($75.00) per month to each one of

my nephews and niece during his or her lifetime, and the balance of the net income of said half of my estate to my brother and sisters, and the survivor of them during his or her lifetime.

"8. In case my said son shall die before reaching twenty-five (25) years of age, and leave legal issue him surviving, it is my will that the one-half of my estate, the part numbered (1) above, that would have passed to him absolutely on reaching twenty-five (25) years of age, shall pass to my executors in trust for said issue, they to manage the same to the best advantage, and use such part of the income, and principal if need be, as they may deem wise for the care, support and education of said issue, and on attaining the age of twenty-one (21) years, what then remains of said fund shall pass to said issue, but if not then living, or on the earlier death of said issue, the same shall pass under the next succeeding clause of this my will.

"9. In case my said son shall die before he become twenty-five (25) years of age, without legal issue him surviving, then subject to the payment of my said brother, sisters, nephews and niece of the bequests above mentioned in manner as therein set forth, I give, devise and bequeath in equal shares, as a perpetual endowment, my entire estate (to four named charitable institutions).   *   *   *

"10. I hereby nominate and appoint William H. Gay, of Grand Rapids, Michigan, and Robert A. Mowat, of Chicago, Illinois, to be the executors of this my will, and the trustees of the trust therein created, and I hereby give to my said executors and trustees, and the survivor of them, full power to sell, mortgage and convey any and all of my estate, and said trust estate, and to do any other act in their judgment wise in the settlement of my estate, or in the care of said trust estate, without first obtaining leave or license of any court in the premises.

"In case for any reason said William H. Gay should be unable to act as executor or trustee, then I appoint the Grand Rapids Trust Company, of Grand Rapids, Michigan, to act with said Robert A. Mowat, with all the powers given to my said executors and trustees in this my will."

With the exception of paragraphs 1 and 2 the court below held the entire will invalid, mainly on the ground that paragraphs 3 to 7 created a trust which included seven lives of two generations of beneficiaries whose several interests were not assignable, thereby suspending the power of alienation beyond two lives in being in violation of our statute against perpetuities which provides (3 Comp. Laws 1915, §§ 11532, 11533):

"Section 14. Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed.

"Sec. 15. The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section" (which relates to contingent remainders).

All defendants have appealed except testator's minor son and sole heir who was 17 years of age at the time of his father's death and appears in this court by guardian and counsel as appellee. The executors who filed this bill did not appeal but have filed briefs in this court contending that the decree of the court should be reversed and the will sustained. This they had a right to do. Reflections and counter-reflections on the position parties to this litigation take as to the validity of the will are of no assistance to the court in determining whether it violates the law against perpetuities, which is the only question involved. Those portions of briefs filed by the respective parties devoted to such reflections will be given no consideration.

Construction of this will is only involved to the extent of determining whether, by its multiplicity of direct and contingent provisions and limitations as

worded, it operates to suspend absolute power of aliena-
tion during the continuance of more than two lives in
being contrary to our statutory prohibition as here-
tofore construed.   The rule against perpetuities is
not a rule of construction, but a peremptory command
of law.   When the language of a will plainly indicates
an intent of the testator to dispose of his estate
burdened with such conditions and limitations as sus-
pend the power of alienation beyond the prescribed
limit, the mandate of that law meets and defeats his
intent, and renders his will void.

Running through all the provisions and contingencies
wrought into this instrument, wherever clear title
might ultimately settle under any of its conditions,
we find the estate is burdened by an interest in it
or its income of seven persons in being to the last
survivor, not counting possible beneficiaries provided
for not yet in being.   So long as either of the two
nephews or niece lives he or she is to receive a
monthly payment of $75 from the income of the estate,
to be taken from the whole or one-half of such in-
come according to stated contingencies, while testator's
brother and two sisters are to receive the income of
one-half of said estate for life, "divided equally be-
tween the survivors," less one-half or the whole, ac-
cording to specified contingencies, of the monthly pay-
ments during life provided for the nephews and niece.

Counsel for sustaining the will contend no trust is
created by the will except for the unborn issue of
testator's son, and designating as "annuities" the
monthly payments provided for the nephews and niece
in paragraphs 3-5, urge that they are thereby made
outright bequests of definite sums of money to be
paid the beneficiaries by the executors.   But the next
paragraph (6) directs "the remainder of the net
income," not the income of the remainder, to "be
equally divided between" testator's son, brother and

two sisters, and although by paragraph 7 an owner-
ship accrues to the son if he lives until 25 years
old which relieves one-half of the estate of the monthly
payments to nephews and niece, the brothers and
sisters yet receive "the balance of the net income"
of the remaining half after payment of the $75 per
month each provided for the nephews and niece, thus
plainly providing that their monthly payments are to
be taken from net income and are not annuities.   An
annuity is "A yearly payment of a certain sum of
money, granted to another in fee, for life or years,
charging the person of the grantor only" (Burrill's
Law Dict.), distinguished from an "income" by the
latter being interest or profits to be earned. *Bartlett
v. Slater*, 53 Conn. 102 (55 Am. Rep. 73).

We think an express trust was created by the terms
of the will which with its various protracting pro-
visions could not well be executed otherwise, except
as to paragraphs 1 and 2 which are not questioned.
A trust is twice mentioned in the will, first in para-
graph 8, confined to remote contingencies relating to
issue of testator's minor son, and again in the closing
paragraph (10) appointing executors with full power
to "sell, mortgage and convey any and all of my estate,
and said trust estate, and to do any other act in their
judgment wise in the settlement of my estate," which
could not be fully settled until testator's two nephews,
niece, brother and two sisters were dead and the
contingencies provided in section 8 were out of the
way.

"It is settled that no express words creating a trust
are requisite, if the intent to devote the estate to a
particular purpose is apparent from the terms of the
will.   Where a duty is imposed upon the executor
which makes it necessary for him to retain the pos-
session and control of realty, he will take an interest
adequate to enable him to perform this duty; and an
alienation which cuts off that right is, by implication,
prohibited." *Dean v. Mumford,* 102 Mich. 510.

A substantial portion of testator's estate consists of realty in this jurisdiction and elsewhere. No division is made of the real and personal estate by the will. The beneficiaries for life are given their portions from its income without distinction or designation of kind or amount of property from which any part of the income is to be derived. Our statute against perpetuities concededly relates to real property and the most serious questions involved here as we view it is the indiscriminate submitting the entire income of the estate to the burdens of this trust until the last life beneficiary is dead. As to real property it is provided by section 11583, 3 Comp. Laws 1915:

"No person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest; but the rights and interest of every person for whose benefit a trust for the payment of a sum in gross is created, are assignable."

The will not differentiating, and the life beneficiaries being interested in the rents and profits of the real estate to which it relates, we are unable to see how against the prohibition of this statute those beneficiaries can relieve it of that burden by disposing of their interests. The interests of the life beneficiaries are not sums in gross but portions of an income, or rents and profits of ultimate indeterminate amount, even as to those given a stated monthly stipend owing to uncertainty of their respective lives.

It is further contended that irrespective of the right of beneficiaries to alienate there are "persons in being by whom an absolute fee in possession can be conveyed," as the will in its 10th paragraph gives the testator's executors and trustees full power to sell, mortgage and convey any and all of his estate, and to do any act in their judgment wise in its settlement. If it were a compulsory mandate in connection with settlement of the estate, or if under the provisions

of the will exercise of such discretionary power of alienation ended the trust, that contention would be on firmer foundation.   Cases are cited by counsel from other jurisdictions sustaining without qualification the proposition that authority to alienate granted executors and trustees satisfies the statute against perpetuities, and language of that import is to be found in some of our earlier decisions.   Where the estate is fully and finally settled as a result of the alienation by the executors or trustees and the trust created by the will is ended such is unquestionably the rule; but a distinction is made in this State where the trust is continued for the prohibited period beyond more than two lives in being, first clearly pointed out in a dissenting opinion by Justice CHAMPLIN in *Palms* v. *Palms,* 68 Mich. 355, in part as follows:

"It can make no difference whether, during the time which shall elapse before it vests in the beneficiary, the estate vests in trustees, or is by them transferred to others than the beneficiary, and the proceeds and avails are held by the trustees subject to the trust; the policy of the law is defeated unless the contingency happens when the estate shall vest in the beneficiary within the prescribed limits.   There would be but little use in statute or common law restrictions against perpetuities, and the tying up of estates to await the happening of future events, if they can be avoided by merely clothing the trustees with power of sale, but subjecting the proceeds to the trust declared and by this simple device such postponement of vesting of contingent interests be validated."

The *Palms Case,* in which other questions relating to trusts were also raised and discussed, was affirmed by an evenly divided court.   This question was not directly discussed in the affirming opinion, but the views stated in the above quotation were unanimously adopted by this court in *Niles* v. *Mason,* 126 Mich. 482, which followed *Dean* v. *Mumford, supra.*   In the *Niles Case, Thatcher* v. *St. Andrew's Church,* 37

Mich. 264, was cited to sustain the proposition relied on here.    In applying the rule to that case it broadly states that "absolute power of alienation" is not suspended where the instrument gives trustees authority to sell and convey real estate.    Reviewing this in the *Niles Case* it is said:

"If the language there used be not considered in connection with the facts of the case, there would be much force in the contention.    In that case, however, the trust ceased with the alienation of the land by the trustees, and the trust was at an end."

By the terms of this will a trust was created under which, on certain contingencies, the whole of this estate should be held in trust until the death of the last one of the six life beneficiaries representing two generations with benefit of survivorship between testator's two brothers and sister.

We are constrained to agree with the conclusion of the trial court that because all of testator's estate both real and personal is included without distinction in and burdened by an invalid trust which violates the statute against perpetuities, the will must fail in its entirety except as to sections 1 and 2, in so far as it affects property subject to the jurisdiction of this State.

The decree appealed from will stand affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.