EDGAR S. DEAN V. SAMUEL R. MUMFORD ET AL.

*Will—Bill to construe—Trust—Suspension of power of alienation.*

1. Where executors appear and answer a bill filed by a legatee, asking for a construction of the terms of the will if held valid, and asserting that it is as a whole invalid in equity, and in terms submit the question of the construction of the will to the court, the court may properly maintain jurisdiction.

2. The will, a construction of the terms of which is sought, provides:

   a—That the wife of the testator shall have the use of his homestead, together with the furniture and other personal property thereon and connected therewith, to be used and enjoyed by her during her natural life as a home for herself, and for such of the testator's children as shall remain unmarried, and shall be agreeable to her; that the taxes and repairs upon the homestead shall be paid by the executors from the estate; and that they shall also pay to the widow $1.500 per annum, in quarterly or monthly installments, as she may desire, during her natural life.

   b—That the residue of the estate shall be divided equally among the testator's five children, naming them and giving their ages, or to the survivors of them, excepting that in case any of said children shall die, leaving a child or children, his or her interest shall go to and belong to said child or children.

   c—That certain advances made to certain of the testator's children, and charged to them upon his books, together with any advances that may be made after the execution of the will, and charged to the child or children to whom made, shall be deducted from the portion given to such child or children.

   d—That the portions given to three of the testator's sons, naming them (one of whom was unmarried when the will was executed), shall be held in trust by the executors, as trustees for said sons, their wives and children, and the interest, income, and profit thereof shall be used and paid as in the judgment of the executors shall be best for the support and maintenance of said sons, their wives and children, during the lives of said sons and their wives, and, upon the decease of said sons and their wives, the portion so held in trust by said

executors shall become the property of and go to the child or children of said sons, severally, and their heirs and assigns, forever.

And it is held:

a—That it was the purpose of the testator to divide the (residue of his) estate into five equal parts; that he did not intend by paragraph d that the portions set apart to his three sons should be held by his executors in trust for the common use of said sons, their wives and children; that, in so far as reference is had in said paragraph to the wife of said unmarried son, it was intended to mean any wife of his living at the time of the decease of the testator; and that, as to the estate vesting upon the death of the widow, the power of alienation was not suspended for a longer period than two lives in being.

b—That the intent is clearly manifested to make the entire estate subject to the payment of the taxes and the making of repairs on the homestead, and the payment of the annuity to the widow; that the executors are required to devote the income of the entire estate to that purpose, if necessity therefor exists; that the power of alienation was thereby suspended during the lifetime of the widow, and therefore the trust sought to be created by paragraph d is void.

c—That the will is not void in toto; that certain duties are imposed upon the executors which may, notwithstanding the failure of the limitation in paragraph d, be performed, and the provision charging against the shares of certain of the children of the testator the amounts advanced to them should be sustained.

d—That, as the widow has elected to take under the statute, it is not material to determine whether, upon the failure of the limitation in paragraph d, the children of the testator would take an absolute fee under paragraph b of the will, as their interest would be the same whether they take as heirs at law or by the terms of the will.

3. The following general propositions are summarized from the opinion of MONTGOMERY. J.:

a—Provisions in a will which are not valid when made and when the will takes effect cannot thereafter be made valid by the election of the widow to take under the statute.

b—No express words creating a trust are requisite, if the intent to devote the estate to a particular purpose is apparent from the terms of the will.

c—Where a duty is imposed upon the executor which makes it necessary for him to retain the possession and control of realty, he will take an interest adequate to enable him to per-

form this duty; and an alienation which cuts off that right is, by implication, prohibited.

*d*—Where a will provides that certain debts, legacies, and charges are to be paid, and the residue of the estate not thus expended is then to be divided, the particular debts, legacies, and charges will be considered a charge against the estate, real and personal

Appeal from Wayne. (Frazer, J.) Argued April 4, 1894. Decided December 7, 1894.

Bill for the construction of a will. Complainant appeals. Reversed, and decree entered in this Court in accordance with the opinion. The facts are stated in the opinion.

*George W. Radford* and *Edward A. Barnes*, for complainant.

*Moores & Goff* and *Hoyt Post*, for defendants.

MONTGOMERY, J. Complainant, as one of the legatees named in the will of Horace M. Dean, filed this bill against the defendants Mumford and Frank Dean, executors, and the codefendants as legatees, asking a construction of the terms of the will, if held valid, and asserting that it is as a whole invalid, in equity.

A preliminary question is raised as to the jurisdiction, it being claimed by defendants that, except at the suit of a trustee or *cestui que trust* who asks a direction as to the execution of a trust, a court of chancery has no jurisdiction to construe a will or declare any or all of its provisions invalid. But, however this may be, the executors have answered in this case, and in terms submitted the question of the construction of the will to the court. As it is undoubted that they might have invoked the jurisdiction of the court for that purpose by a bill, we think that, they having submitted the question, the court may properly maintain jurisdiction. *Sawtelle v. Ripley,* 85 Wis. 72.

The material parts of the will are as follows:

"*First.* I give and bequeath to my beloved wife, Mary C. Dean, the use of the homestead now occupied by us, No. 83 State street, together with all the furniture and other personal property thereon and connected therewith, to be used and enjoyed by her during her natural life as a home for herself, and for such of my children as shall remain unmarried, and shall be agreeable to her; the taxes and repairs upon said homestead to be paid by my executors from my estate.

"*Second.* I also give and bequeath to my said wife the sum of $1,500 per annum, to be paid to her quarterly or monthly by my executors, as she may desire; to be received, used, and enjoyed by her during her natural life.

"*Third.* All the rest, residue, and remainder of all the goods, chattels, real and personal estate, of whatsoever kind or nature, or wheresoever the same may be situated, I desire to be divided equally between my five children,— Edgar S., aged 38; Arch. H, aged 30; Herbert L., aged 28; Frank, aged 26; and Lizzie, aged 23,—or to the survivors of them, excepting in case any of them shall die leaving child or children surviving; then, in such case, the respective interests of my sons and daughter above named shall go to and belong to the child or children surviving them, respectively.

"*Fourth.* Whereas, I have advanced to my sons Edgar S. and Arch. H. certain sums of money, which will appear charged to them upon my books, and if I shall advance to them, or either of them, or others of my children, during my lifetime, other sums, all such sums in money or property which I shall advance to or pay for and shall charge to them, respectively, shall be deducted from the respective portions above designated to go to my said children.

"*Fifth.* I hereby will and direct that the portions hereinbefore designated for my said sons Edgar S., Arch. H., and Herbert L. be held in trust by my executors, as trustees for my said sons, their wives and children, and the interest, income, and profit thereof be used and paid as in the judgment of my said executors shall be best for the support and maintenance of my said three sons, their wives and children, during the lives of my said sons and their wives; and, upon the decease of said sons and their

wives, the portion so held in trust by my said executors shall become the property of and go to the child or children of said sons, severally, and their heirs and assigns, forever."

It is the contention of complainant—*First*, that the first and second clauses make the taxes and repairs and annuity a charge upon the estate, and create a trust in favor of the widow, which continues during her life; and, *second*, that, if this be not so held, then, under any construction which may be given to the fifth clause, the power of alienation is suspended for a longer period than during two lives in being, and that for this reason the trust created in the fifth clause falls.

The defendants contend—*First*, that inasmuch as the widow has elected to take under the statute, and not under the will, the validity or non-validity of the will should be determined without reference to the attempted provision for her; *second*, that the power of alienation was not, by the terms of the will, suspended during the life of the widow; and, *third*, that by the proper construction of the fifth clause, in connection with the third and fourth clauses, of the will, the power of alienation is not suspended, as to any portion of the estate which vested after the death of the widow, for a longer period than two lives in being.

We think, if the power of alienation was not suspended during the life of the widow, the case presents no very serious difficulty. It appears to be conceded by counsel who seek to maintain the validity of the will and its provisions that the fifth clause restrains alienation for the period of two lives in being. The construction of the will for which they contend is that, under the provisions of the third clause, the estate is to be divided into five equal shares; that two of the shares—those devised to Frank and

Lizzie—vest at once; that, by the terms of the fourth clause, certain advancements are to be taken out of the shares of Edgar S. and Arch. H., and the remainder is, in each instance, under the fifth clause, as in the case of the one-fifth interest of Herbert L., to be held in trust by the executors for the respective legatees named, their wives and children; and that, upon the decease of Edgar S. and his wife, Eliza, the one-fifth, less the deducted advancements, becomes the property of their children; and so in the case of Arch. H. and Herbert L. We think this contention is sound, so far as it relates to the third and fifth clauses, if it be held that there was no restraint on alienation during the life of the widow. It was very plainly the purpose of the testator to divide his estate into five equal parts, and we think it very clear that it was not the intention to provide by the fifth clause that the three parts which had been set apart by the third clause of the will to Edgar S., Arch. H., and Herbert L. should be held in trust for the *common* use of the sons, their wives and children. But it is suggested that, in this view, as Herbert L. was unmarried at the time the will took effect, the will should be construed to relate to any wife whom he might in the future marry, and, so construed, the estate would not vest in the children or heirs until after the expiration of two lives in being. We think the will not open to this construction, but that it was intended to mean any wife of Herbert L. living at the time of the decease of the testator. *Van Brunt v. Van Brunt,* 111 N. Y. 178. The will should not be given a construction, for the purpose of defeating the intention of the testator, which would bring within its purview one who should in the future become the wife of one of the legatees.

The important question, then, as it appears to be conceded, is whether the power of alienation was suspended during the life of the widow. If the contention of defend-

ants' counsel, that the election of the widow to take
under the statute calls for a construction of the will as it
would have read without any attempt to make provision
for her, be allowed, this, with what we have above deter-
mined, would be an end of the case. A statement is found
in the case of *Bailey v. Bailey*, 97 N. Y. 471, sustaining
the contention of defendants' counsel. But in that case
it had been determined in the opinion that the bequest to
the widow was of a life estate in the property, which she
had the right to sell if she chose; so that the statement
affirming the doctrine here contended for was *dictum.*
We cannot accept this as a correct statement of the law.
The will must, it seems to us, be construed as made. It
will not do to say that provisions which are incorporated
in a will, and which are not valid when made and when
the will takes effect, can thereafter be made valid by the
election of the widow. This would, in effect, empower the
widow to execute a will by validating what was previously
no will. Counsel also cite, as sustaining this contention,
*Woodburn's Estate,* 151 Penn. St. 586; *Small v. Marburg,*
77 Md. 11; and *Tracy v. Murray,* 44 Mich. 109. In the
cases of *Woodburn's Estate* and *Small v. Marburg* the
question before the court related to the effect of the elec-
tion of the widow to take under the statute upon the dis-
tribution to be made of the estate. Neither case deals
with the question of whether the widow can, by declining
to take under the will, make that valid which was before
invalid, nor was any such question before the court. In
*Tracy v. Murray* the widow renounced her right to take
under the statute, and elected to take under the will.
The Court say:

"Accepting as correct the doctrine of those cases which
hold that the widow becomes a purchaser of the legacy by
releasing her dower, the contract is not a completed one
until her acceptance of the provisions of the will after her

husband's decease.. Had he purchased.from his wife .her dower, and given her his note therefor, upon his death such obligation, if not. paid, would simply become a claim against his estate, and take its place, when proven against the estate, with the other allowed claims. The husband during his lifetime, wishing to make arrangements to have his wife release her dower interest in the lands of which he should die seised, makes an offer therefor which is not to be submitted to her for acceptance until after his decease."

This case, it will be seen, presented .no question of validating invalid provisions :of the will, but dealt with the rights of the widow as they existed under the will as made by the. deceased; and the case certainly contains no intimation which sustains the contention here made. .

Were these taxes .and annuity a charge upon the estate in such a sense as to create a trust, and suspend the power of alienation? It is settled that no express words creating a trust are requisite, .if the intent . to devote .the estate to a particular purpose .is apparent from the terms of the will. . Where a duty is imposed upon the executor which makes it necessary for him to retain the possession and control of realty, he will take an interest adequate to enable him to perform. this duty; .and an alienation which cuts off that right is, by implication, prohibited. Perry, Trusts, §§ 121, 313, and cases cited; *Cummings v. Corey,* 58 Mich. 494; *Vail v. Vail,* 7 Barb. 226. And where there is a provision in the will :that certain .debts, legacies, and charges are to be paid, and the residue .of the estate not thus expended is then to be divided, the particular debts, legacies, and charges will be considered a charge against the estate, real and personal. See a discussion of this rule in 2 Jarm. Wills, p. *1,411 *et seq.; Greville v. Browne,* 7 H. L. Cas. 689; *Gainsford v. Dunn,* L. R. 17 Eq. 405; *Lafferty v. Bank,* 76 Mich. 35. It will be noticed in the present case that the will, after bequeathing the use of the homestead, makes the taxes and repairs upon the

homestead payable from the estate of the testator. It also provides for an annuity of $1,500 per annum, to be paid by the executors during the natural life of the widow, and then bequeaths all the rest, residue, and remainder of all the goods, chattels, real and personal estate, to the five children named. We think the intention is clearly manifested to make the entire estate, real and personal, subject to these charges, and the executors may devote the income of the estate, both real and personal, to that purpose, and are required to do so if necessity therefor exists. This attempted restraint on alienation must be held void.

The question is raised as to whether the will is void *in toto*. We think not. Certain duties are imposed upon the executors which might, notwithstanding the failure of the limitation in the fifth clause, be performed, and the provision charging against the shares of Edgar S. and Arch. H. the amount of certain advancements should be sustained.

As the widow has elected to take under the statute, it is not material to determine whether, upon the failure of the limitation in the fifth clause, the children would take an absolute fee under the third clause, as their interest would be the same whether they take as heirs at law or by the terms of the will.

A decree will be entered in accordance with these views. The costs will be paid out of the estate.

The other Justices concurred.