## DEAN v. RADFORD.[1]

1. DEED AS MORTGAGE—EVIDENCE.

On a bill to have a deed declared a mortgage, evidence examined and *held* to show that the deed was a mortgage to secure the amount named as consideration therein.

2. CHATTEL MORTGAGES—EVIDENCE.

On a bill to enjoin the foreclosure of a chattel mortgage, evidence examined and *held* that the mortgage was valid for an amount determined.

Cross-appeals from Wayne; Hosmer, J. Submitted April 6, 1904. (Docket No. 192.) Decided October 4, 1904.

Bill by Edgar S. Dean against George W. Radford and Laura F. Radford to have a deed declared a mortgage and to restrain the foreclosure of a chattel mortgage. From the decree rendered, all parties appeal. Reversed.

*May & Dingeman,* for complainant.

*Thomas A. E. Weadock,* for defendants.

MOORE, C. J. In May, 1892, complainant made a contract with Bowen, Douglas & Whiting that they should conduct certain litigation for him to obtain a construction of a will made by his father. They filed a bill in chancery, on his behalf. Later complainant entered into a contract, the material parts of which read as follows:

"This agreement, made this first day of August, A. D. 1892, between Edgar S. Dean, of Detroit, of the first part, and George W. Radford, of the same place, of the second part, witnesseth: (1) That whereas, by the will of Horace M. Dean, deceased, father of said party of the first part, the share of the estate of Horace M. Dean devised to said Edgar S. Dean is so limited by the terms of the will of

---

[1] Rehearing denied December 7, 1904.

said Horace M. Dean, deceased, that no part of the principal comes into the possession or control of Edgar S. Dean; * * * (4) whereas, the law firm of Bowen, Douglas & Whiting has heretofore filed a bill in chancery, in the circuit court for the county of Wayne, for the purpose of obtaining construction of said will; and (5) whereas, said party of the second part has advanced one hundred and eighty-five dollars in cash to said first party with which to pay for the services of said Bowen, Douglas & Whiting to date in said cause; and * * * (7) whereas, said first party, for the purpose of security for the performance of this agreement, has conveyed to said second party by quitclaim deed an undivided one-fifth of all of said first party's interest in and to the said estate of Horace M. Dean, deceased: * * * It is also agreed that, in consideration of his said services in said cause, said second party shall receive said one-fifth of all the estate and property which said first party shall acquire as the result of said suit, or twenty per cent. less of the proceeds of any settlement said first party may make in said cause, approved by said second party, and independent of any income coming to said first party under the terms of said will. And in addition to the above said second party is to first receive from said first party all sums heretofore advanced by said second party as aforesaid, and which he may hereafter advance to defray the costs of said suit as above provided."

Mr. Radford conducted said litigation to a successful ending. An opinion in complainant's favor was handed down in this court December 7, 1894. *Dean* v. *Mumford,* 102 Mich. 510 (61 N. W. 7). During the progress of this litigation Mr. Radford made many advances to Mr. Dean to enable him to live and to aid him in his business operations. On the 14th of November, 1894, the parties had a settlement, when they both agreed there was due Mr. Radford $3,025, for which amount Mr. Dean gave Mr. Radford his note, and it is Mr. Radford's claim that the receipts and vouchers Mr. Dean had given to him for the amounts represented by this note were delivered to Mr. Dean and destroyed. In May, 1895, there had been an appraisement and partition of the estate between the widow and the various heirs, and certain real estate was set off to the widow as dower. It is claimed that under

the contract Mr. Radford was entitled at this time to $5,875 as his proportion of the estate assigned to the complainant, exclusive of his interest in the real estate assigned to the widow as dower.   At this time 260 shares of stock in the Detroit White Lead Works, to which complainant was entitled, appraised at $7,150, were assigned to Mr. Radford.   Receipts were exchanged at this time.   On the 2d of November, 1895, a deed was drawn, running from Mr. and Mrs. Dean to Mr. Radford.   The consideration named therein was $1,000.   The property described therein was the real estate which had been assigned as dower to the widow.   It was stated therein that the grantors were the owners of the property free and clear of incumbrance, except the dower interest of Mrs. Mary C. Dean, the mother of the complainant.   This deed was acknowledged and delivered to Mr. Radford December 3, 1895.   At the same time a mutual release was signed by Mr. Dean and Mr. Radford, reading as follows:

"This release, made this 3d day of December, A. D. 1895, between George W. Radford and Edgar S. Dean, both of the city of Detroit, Michigan, witnesseth:   That the said parties have this day, for a valuable consideration, adjusted and settled all claims and demands which each holds against the other; and in consideration thereof each of the said parties, for himself and his legal representatives, release and discharge the other of and from all claims and demands whatsoever up to and including the said above date."

It is the claim of Mr. Radford that because of this settlement and release at this time he delivered to Mr. Dean vouchers and notes given by him to Mr. Radford.   Later than this Mr. Radford let Mr. Dean have various sums of money, to secure the payment of which a chattel mortgage was given, upon which it is claimed there was due at the time this cause was decided about $560.

In June, 1902, the complainant filed this bill of complaint, alleging that the deed of December 3, 1895, was in fact a mortgage given to secure the payment of $1,000 and interest, and that complainant had caused to be ten-

dered to Mr. Radford in October, 1901, the sum of $1,355, and that to secure a later debt of $549 he had given a chattel mortgage to Mr. Radford, and that Mr. Radford claimed the deed of December 3, 1895, was an absolute deed, and threatened to foreclose the chattel mortgage if complainant took any steps to recover the real estate. The bill prayed for an accounting, and that the deed might be treated as a mortgage, and for an injunction restraining defendant from foreclosing the chattel mortgage.

The defendant answered at great length, claiming the deed of December 3, 1895, conveyed to him the title in fee, subject to the dower interest of the widow of Horace M. Dean, and that the chattel mortgage was a valid mortgage. The case was heard in open court. The judge held that the deed of December 3, 1895, was a mortgage, and that there was due from Mr. Dean to Mr. Radford $892.14 as principal and $316.64 as interest, and that upon payment of that amount Mr. Radford and his wife convey an undivided 4/25 of the property described in the deed to the complainant. He also decreed the chattel mortgage to be without consideration and void, and ordered it canceled.

It is the claim of complainant that the decree should have required the conveyance of 5/25 interest, instead of 4/25, and for that reason complainant has appealed the case. We deem it unnecessary to discuss this claim, further than to say we think the circuit judge gave a proper construction to the contract and the papers relating to this feature of the case.

The defendant George W. Radford claims the deed was not a mortgage, but a valid deed, and should have been so held. He also contends that, if treated as a mortgage, there is a much larger amount due than the circuit judge found. He also claims the chattel mortgage should not have been canceled. For these reasons he has appealed.

The consideration of the case has been attended with great difficulty. Neither party kept books of account in which the dealings between them was stated. Counsel for defendant has prepared a careful statement of what he

claims on behalf of his client.   The counsel for complain-
ant on this branch of the case have contented themselves
with printing in their brief the written opinion of the cir-
cuit judge.   As before stated, Mr. Radford claims that at
the times settlements were had and receipts given he de-
livered to Mr. Dean receipts and vouchers showing the
state of the accounts.   He produces in court such checks
as he has, which he gave to Mr. Dean.   They cover a very
large portion of the items.   The items most in dispute be-
tween the parties are one of $185 mentioned in the con-
tract of August 1, 1892, an item of $500 represented by
check 6,262, dated January 25, 1895, and an item of
$327.69, insurance money paid to Mr. Radford.   When he
decided the case the circuit judge disallowed the $185 item
and the $500 item.   He said of the item of $500 that, if
there was a check for it, he had unquestionably done Mr.
Radford an injustice.

We will take up the item of $185 first.   Mr. Radford
swears positively that he let Mr. Dean have this money as
stated in the contract of August 1, 1892; that Mr. Dean
said he wanted the money to pay Bowen, Douglas &
Whiting, so that they should not know from whom it
came.   Owing to the absence of a member of that firm,
settlement was not made with them until September 19,
1892, when they were paid $200 by Mr. Radford giving his
check for that amount.   Mr. Dean denies receiving this
money.   Mr. Radford says Mr. Dean received it and used
it.   The contract recites it was advanced.   The contract
contemplates Mr. Radford should make advancements.
Mr. Dean was at this time needing money.   In addition
to producing the check of $200, paid to Bowen, Douglas
& Whiting September 19, 1892, one of $265 is produced,
dated October 8th, for money which Dean got; November
23d one for $10; November 29th one for $10—sums re-
ceived by Dean; and other sums follow later.   There
can be no serious dispute but that the parties got together
November 14, 1894, when the recollection of both of them
ought to have been clear as to this item of $185, and ar-

rived at a settlement showing $3,025 due Mr. Radford, for which Mr. Dean gave his note; and in his testimony he says several times he owed Mr. Radford at this time $3,000, and claimed it was paid January 18, 1895, by delivering to Mr. Radford John Ward's check of $3,000. We think it fairly certain Mr. Dean received the $185.

The $500 item is evidenced by check 6,262 for that amount, delivered by Mr. Radford to Mr. Dean. Mr. Dean admits he had the money, and paid it to Larabee & Forncrook on account of lots he had bought of them. He says he had the money in the bank, and when he wanted to get the $500 the bank was closed, and would not open until 6 o'clock, and for that reason he got the check from Mr. Radford; that when the bank opened at 6 o'clock he got the money and paid it to Mr. Radford, who put it in his vault and kept it there that night; that he delivered it in the presence of Mr. Race. Mr. Race was sworn as a witness, and has no recollection of such a transaction. Mr. Radford swears positively it did not occur. We think he should be charged with this item.

As to the insurance item, defendant says complainant was credited with it, and produces checks showing where it was paid out. Complainant admits it was paid out as stated, but claims he got no credit for it. It cannot be demonstrated, from the state of the account as disclosed by the record, what the fact is. Defendant has produced checks aggregating $10,466.74. He also claims that, exclusive of the item of $185 which we have already considered, he paid to Mr. Dean six items for cash paid to Mr. Dean, aggregating $251.90, and that there were sundry other charges for average interest on balances due him and services not embraced in the contract, for which amounts settlements were agreed upon, aggregating $1,243.82, and that, after allowing all credits to which Mr. Dean is entitled, including the insurance of $327.69, there is a balance in Mr. Radford's favor of upwards of $2,000. We think that the evidence is fairly clear that in the dealings subsequent to the giving of the

deed of December 3, 1895, and prior to the computation of the amount due on the chattel mortgage in September, 1901, made by Mr. Morse, of which computation the complainant had full knowledge, this item of insurance money, $327.69, received September 20, 1897, was accounted for.

Troublesome as the foregoing questions have been, we come now to two even more difficult ones: (a) What was the consideration of the deed? (b) Was it a mortgage?

The deed recites the consideration to be $1,000. Mr. Dean swears that was the amount, and he produces a paper, which his counsel say was delivered to him by mistake, in the handwriting of Mr. Radford, commencing: "Detroit, Mich., 188—. In account with George W. Radford, attorney," etc. Then follow, commencing with May 31, 1895, 12 different charges, and then the following, under date of December 4, 1895: "By deed of dower reversion, $1,000." Then follow 20 charges, aggregating nearly $1,700. Mr. Morse, a reputable attorney, then in the employ of Mr. Radford, now dead, who drew the deed, testifies that the consideration was the cancellation of the balance due from Mr. Dean, which he understood was $1,000 or $1,200, and $600 to be paid to him by Mr. Radford, which was afterwards paid. He also says the amount of the consideration named in the deed was fixed by Mr. Dean. Mr. Radford's testimony is substantially the same as that of Mr. Morse, except that he put the amount due to him several hundred dollars higher than does Mr. Morse. He also says he had no knowledge of the amount named as the consideration in the deed until it was delivered to him. Human recollection after a long interval of time is so faulty that we are inclined to give great weight to the written memorandum. That made by Mr. Morse in the deed states it to be $1,000. The memorandum made by Mr. Radford as of December 4, 1895, the next day after the deed was delivered to him,

reads: "By deed of dower reversion, $1,000." We think these written memorandums should control.

We now come to a consideration of the question, Should the paper be regarded as a mortgage? Mr. Dean says it was so understood. Miss Doolittle was of that impression, though her testimony, standing alone, would have little value. Mr. Morse and Mr. Radford both say Mr. Dean sold the property, and that the deed was not intended to be a mortgage. In reaching a conclusion, it is well to consider the value of the property and the situation of the parties. We have already reached the conclusion that the consideration was $1,000. The assessed valuation of all the property described in the deed was $32,800. At the time the deed was made Mr. Dean delivered to Mr. Radford a statement from Larabee & Forncrook, real estate men, estimating the property to be worth $60,500. In the appraisal of the estate of Horace M. Dean, made by men familiar with real estate, when it was assigned to the widow as dower, it was called worth $57,700. We think a great preponderance of the testimony shows it was worth at least $57,000. Upon this basis $4/25$ would be worth $9,120. It has been made clear that the $4/25$ of the land is subject to the dower of Mary C. Dean. She was 54 years old at this time. We do not know of any proper method of computation which will reduce the value of real estate, worth $9,120 if no dower interest therein existed, to $1,000 because of a dower interest possessed therein by a woman 54 years old. It should not be forgotten that the relationship of client and attorney existed between these parties. Both Mr. Morse and Mr. Radford say, when this deed was made, Mr. Dean was in straitened circumstances, and give that as a reason why he was anxious to sell the land. In any aspect of the case, we think this deed ought to be treated as a mortgage, upon which there is due as principal $1,000 and interest from date. A careful examination of the record leads us to the belief that there was due on the chattel mortgage September 28, 1901, $559.74, no part of which has been paid.

That part of the decree which canceled the chattel mortgage should be set aside.

The decree is reversed, and one will be entered here in accordance with this opinion.

The other Justices concurred.