GARDNER *v.* CITY NATIONAL BANK & TRUST CO.

1. WILLS—CONSTRUCTION—INTENT.

In the construction of a will the intention of the testator is the important thing to determine through adoption of rules of construction applicable to the peculiar facts and circumstances of each case.

2. SAME—INTENT DRAWN FROM WHOLE WILL.

The substance of testator's intent as drawn from the whole will is to be considered rather than the form of expression or meaning of a word or phrase found in it.

3. SAME—DESCENT OF PROPERTY—VESTING OF ESTATES.

    The law favors that construction of a will which will distribute the testator's estate most nearly in accordance with the statutes of descent and distribution and also favors the vesting of estates.

4. SAME—USE OF PAROL EVIDENCE.

    Parol evidence cannot be resorted to to ascertain testator's intent or to contradict the language of a will unambiguous on its face but is to be availed of to disclose meaning of terms used.

5. PERPETUITIES—INVALID SUSPENSION OF ABSOLUTE POWER OF ALIENATION—VESTING OF ESTATE.

    The absolute power of alienation of testamentary trust property is suspended in violation of statutes on restraint on alienation and vesting of estate violates rule against perpetuities where *cestuis que trustent* were testator's two daughters who had a life interest and their living and unborn children with remainders over to survivors and one other in case of death before share vested absolutely, although trustees had power to dispose of property of trust estate at their option (3 Comp. Laws 1929, §§ 12934–12936).

6. SAME—PERSONALTY.

    Trust of personalty must be treated by the common-law rule against perpetuities, there being no statute respecting them.

7. SAME—TIME OF CREATION OF ESTATE.

    The time of the death of testator is deemed the time of creation of an estate or interest by will so far as the rule against perpetuities is concerned.

8. TRUSTS—ALL FAILS WHERE PART ILLEGAL.

    The entire devolution of property by trusts must fail where legal and illegal trusts are so inseparably united that if one be retained and the other rejected the scheme fails.

9. SAME—REALTY AND PERSONALTY.

    Residuary trust making same disposition of realty and personalty is void in its entirety where void as to realty.

10. PERPETUITIES—PURPOSE OF RULE AGAINST PERPETUITIES AND STATUTES ON RESTRAINT OF ALIENATION.

    The rule against perpetuities and statutes prohibiting suspension of the absolute power of alienation for more than two lives

in being at the creation of the estate are for the purpose of defeating testator's intention, not to determine it, and they aim to prevent property being taken out of trade and commerce until the lapse of a long period of time (3 Comp. Laws 1929, §§ 12934–12936).

11. SAME—INVALID TESTAMENTARY TRUST.
   Testamentary trust which prevented absolute vesting of title until any unborn children of testator's daughters should reach the age of 30 years *held*, to violate the rule against perpetuities.

12. SAME—DISTINCTION OF PURPOSE BETWEEN STATUTES ON RESTRAINT ON ALIENATION AND RULE AGAINST PERPETUITIES.
   Statutory rule prohibiting suspension of absolute power of alienation for more than two lives in being at the creation of the estate and rule against perpetuities requiring vesting of estates within a period are separate and distinct (3 Comp. Laws 1929, §§ 12934–12936).

13. WILLS—COURT CANNOT MAKE NEW WILLS.
   Courts cannot make new wills for testators who have failed to make valid wills for themselves.

Appeal from Cass; Warner (Glenn E.), J. Submitted April 19, 1934. (Docket No. 64, Calendar No. 37,705.) Decided June 4, 1934.

Bill by Alene Gardner against City National Bank & Trust Company and another, executors of the last will and testament of Frank Julius French, deceased, and others to construe a will. Cross-bill by Natalie Brecker Coleman against plaintiff and other defendants to set aside portions of the will. From decree rendered, plaintiff and defendant Coleman appeal. Reversed.

*Wiley, Streeter, Smith & Ford,* for plaintiff.

*Stuart B. White,* for defendant executors.

*Casper R. Grathwohl,* for defendant Coleman.

POTTER, J.   Bill filed to construe the last will and testament of Frank Julius French, deceased.   From the decree entered, plaintiff and defendant Natalie Brecker Coleman appeal.   Frank Julius French, formerly of Niles, Michigan, made and executed his last will and testament July 22, 1931, and died September 19, 1931, leaving such last will and testament in full force and effect.   It was duly admitted to probate.   It provided for revoking all former wills by the testator; for the payment of all testator's legal debts owing at his death, and all Federal and State inheritance taxes; for the erection of a marker at his place of burial on the family burial lot; for the disposition to his two daughters of his personal effects and jewelry; and all the rest and residue of his estate the testator gave, devised and bequeathed to trustees in trust for the following purposes and uses:

"A.   To invest and reinvest the same in such manner as will furnish the largest income upon such trust funds consistent with conservative and safe investment, and for that purpose to sell and convey, lease or exchange the whole or any part of the property of my estate, whether real or personal, and to that end without authority of any court to execute any and all conveyances or papers which may be necessary to carry out the terms thereof; and I authorize my trustees to retain in the *corpus* of the trust, in its discretion, all or any securities belonging to my estate at the time of my death, whether or not, such securities are legal investment for trust funds; and my trustees shall not be liable for any losses which may be sustained by my estate from holding the same.

"B.   As soon as my trustees shall have qualified and shall have come into possession of my estate, as hereinbefore set forth, I direct my said trustees to divide the same into two equal shares, one for my daughter, Alene, and the other for my daughter,

Natalie; and my trustees shall hold, use, manage, invest and reinvest the property and funds of each trust in accordance with the powers hereinbefore conferred upon my said trustees, and to receive the issues, income and profit therefrom and pay the expenses in connection with the care, management and maintenance thereof, and pay the net income from the trust created for Alene to her during her lifetime in as near equal monthly instalments as possible; and pay the net income from the trust for Natalie to her during her lifetime in as near equal monthly instalments as possible.

"C.  I authorize and empower my said trustees to use so much of the principal of the trust created for Alene as may be necessary, in their discretion, for the benefit of Alene or her children in case of extreme necessity or for the education of her children in case the income is not sufficient, and my said trustees shall use so much of the principal of the trust created for Natalie as they may deem necessary, in their discretion, for the benefit of Natalie or the lawful issue of her body, if any, in case of extreme necessity, or for the education of her children in case the income is not sufficient; provided, further, that no adopted child of Natalie's shall be considered as her child for the purpose of this will. The use of the principal from my estate for the education of my daughters' children shall be restricted as follows:  Principal may be used only for their education in accredited schools of the State of Michigan.  My reason for this provision is, that I feel that my grandchildren can get sufficient training in our Michigan schools and save great expense over what would be required to send them to schools out of the State.

"D.  Upon the death of my daughter, Alene, the remaining *corpus* of the trust created for her together with any unpaid income therefrom, shall be continued in trust for the benefit of her children, Frank Gardner, Jacqueline Gardner, Alene Gard-

ner and/or any further born children, each child to have an equal share of the trust estate, and the net income from each child's share shall be paid to such child in convenient instalments until such child shall attain the age of 25 years, at which time my said trustees shall transfer, pay over and deliver one-half of the remaining *corpus* of such child's trust to such child continuing the balance of the trust until such child attains the age of 30 years, at which time my said trustees shall transfer, pay over and deliver the remaining *corpus* of such child's trust to such child together with the unpaid income therefrom thereby terminating the same, and my said trustees are authorized and empowered, in their discretion, to use such portions of the principal of each trust for each child in case of absolute necessity; and should any child die prior to the termination of the trust created for such child with issue surviving, then and in that event, my said trustees shall distribute such deceased child's share equally among the surviving issue and continue the same in trust for such child until such child attains the age of 21 years paying the income from the same to such child, but should there be no surviving issue, then my said trustees shall distribute such deceased child's share equally between the survivors to become a part of the *corpus* of such survivor's trust unless such survivor has already attained the age of 30 years, in which event the same shall be transferred, paid over and delivered to such surviving child, to be his or hers absolutely.

"E.    Should my daughter, Alene, die and all of her children die prior to the termination of the trusts created for them leaving no issue surviving, then I direct that the remaining *corpus* of the trust originally created for Alene together with any unpaid net income therefrom, shall become a part of the *corpus* of the trust created for my daughter, Natalie.

"F. Upon the death of my daughter, Natalie, the remaining *corpus* of the trust created for her together with any unpaid income therefrom, shall be continued in trust for the benefit of her children, if any (lawful issue of her body, and not to include any adopted child or children) each child to have an equal share of the trust estate, and the net income from each child's share shall be paid to such child in convenient instalments until such child shall attain the age of 25 years at which time my said trustees shall transfer, pay over and deliver one-half of the remaining *corpus* of such child's trust to such child continuing the balance of the trust until such child attains the age of 30 years, at which time my said trustees shall transfer, pay over and deliver the remaining *corpus* of such child's trust to such child together with any unpaid income therefrom thereby terminating the same; and my said trustees are authorized and empowered, in their discretion, to use such portions of the principal of each trust for each child in case of absolute necessity and should any child die prior to the termination of the trust created for such child with issue surviving, then and in that event, my said trustees shall distribute such deceased child's share equally among the surviving issue and continue the same in trust for such child until such child attains the age of 21 years paying the income from same to such child, but should there be no surviving issue, then my said trustees shall distribute such deceased child's share equally between the survivors to become a part of the *corpus* of such survivor's trust unless such survivor has already attained the age of 30 years in which event the same shall be transferred, paid over and delivered to such surviving child to be his or hers absolutely.

"F. Should my daughter, Natalie, die and her children (the lawful issue of her body) shall also have died prior to the termination of the trust created for them leaving no issue surviving, then I di-

rect that the remaining *corpus* of the trust originally created for Natalie shall be added to the trust created for Alene; provided, however, that should both of my daughters, Alene and Natalie, predecease me and all of my grandchildren predecease me without issue, then upon my death, I give, devise and bequeath my estate to the heirs at law of my brother, Joseph Edward French, now deceased.''

An examination of the trust estate as above created shows that the trustees named in the will were authorized and empowered to invest and reinvest the same in such manner as would furnish the largest income possible upon such trust funds consistent with conservative and safe investment. The trustees were given power and authority to sell, convey, release or exchange the whole or any part of the real estate and personal property, or not to sell and dispose of the same; to retain in their discretion the securities on hand belonging to testator's estate as a part of the trust funds. As soon as the testamentary trustees qualified under the law, they were to divide the trust estate created by the testator's will into two equal parts: one, for testator's daughter, Alene Gardner, and the other for his daughter, Natalie Brecker Coleman. To each of the daughters above named was given the net income and profits of that part of the trust estate, allotted to them by the trustees, during the period of their natural life. The trustees were authorized and empowered to use so much of the principal of the trust fund so created for and allotted to either of said daughters as might be necessary for their benefit or for the benefit of the lawful issue of their body, in case of necessity. The will provided that upon the death of the daughter Alene, the remaining *corpus* of the estate created for and allotted to her, together with the unpaid

income therefrom, should be continued in trust for the benefit of her children, Frank Gardner, Jacqueline Gardner, Alene Gardner and/or any further born children. Each child was to have an equal share of such trust estate. The net income from each child's share was directed to be paid to such child until he or she should attain the age of 25 years. At the age of 25 years, each child of his daughter Alene was to have one-half of the remaining *corpus* of such child's trust estate, absolutely. The balance of each such child's portion of the trust estate was to be delivered to such child absolutely when such child should reach the age of 30 years. The trustees were authorized to use portions of the principal of the trust fund for each child in the case of absolute necessity. Subsequent provisions were made for the disposition of each child's share of the trust estate in case of their death before the period of distribution to such children of Alene should arrive. Provision was made for the disposition of the trust estate in case of the death of the daughter Alene and the death of all her children prior to the termination of the trust created for such children. A substantially similar provision was made for the daughter Natalie and for her children in case she should have any, and for disposition of the property allotted by the trustees to the trust created for her, and her children, all of which appears at large in the portion of the will of testator as above quoted.

The important thing in the construction of a will is to determine the intention of the testator. *Jameson's Appeal*, 1 Mich. 99; *Kinney* v. *Kinney*, 34 Mich. 250; *Toms* v. *Williams*, 41 Mich. 552; *Tewksbury* v. *French*, 44 Mich. 100; *Ireland* v. *Parmenter*, 48 Mich. 631; *Eyer* v. *Beck*, 70 Mich. 179; *Thurber* v. *Battey*, 105 Mich. 718; *Gadd* v. *Stoner*, 113 Mich. 689; *Greg-*

*ory* v. *Tompkins,* 132 Mich. 205; *Foster* v. *Stevens,* 146 Mich. 131; *Union Trust Co.* v. *Fisher,* 240 Mich. 68; *In re Canfield's Estate,* 248 Mich. 571.

"No hard and fast rule can be applied to all cases alike. The peculiar facts and circumstances of each case must be considered, and from them the court must determine the rules of construction to be adopted." *Foster* v. *Stevens, supra.*

It is not so much the language made use of by the testator as his evident intention that governs. *Tracy* v. *Murray,* 49 Mich. 35; *Bateman* v. *Case,* 170 Mich. 617.

"The construction of a will is not merely determining the meaning of a word or phrase found in it, or ascertaining the sense of a particular sentence or form of words, though both are involved, but it demands the drawing of such conclusions from the whole as are manifestly within the spirit of the text, though they may be beyond the direct expressions there found. It is the substance rather than the form which is to be considered." *Bateman* v. *Case, supra.*

The law favors that construction of a will which will distribute the testator's estate most nearly in accordance with the statutes of descent and distribution. *Rivenett* v. *Bourquin,* 53 Mich. 10. It favors the vesting of estates. *Toms* v. *Williams, supra; Hull* v. *Osborn,* 151 Mich. 8; *Taylor* v. *Richards,* 153 Mich. 667; *Van Gallow* v. *Brandt,* 168 Mich. 642.

Parol evidence cannot be resorted to to add to, vary or contradict the language of a written instrument unambiguous on its face, particularly a will. *Defreese* v. *Lake,* 109 Mich. 415 (32 L. R. A. 744, 63 Am. St. Rep. 584); *Turner* v. *Burr,* 141 Mich. 106; *Van Gallow* v. *Brandt, supra.* Parol evidence of the testator's intention in making a will cannot be

given or considered. *Tuxbury* v. *French,* 41 Mich. 7; *Waldron* v. *Waldron,* 45 Mich. 350; *Oades* v. *Marsh,* 111 Mich. 168; *Turner* v. *Burr, supra.*

"The general principle is not to be overlooked that the words of a testator, like those of other persons, naturally refer to the circumstances about him at the time, and that in order to have his outlook and all reasonable means of explanation of his words, not in addition or contradiction to them, but to disclose his use of them, a knowledge of these circumstances is essential." *Tuxbury* v. *French, supra.*

The estate of the testator consisted of both real and personal property. Both real and personal property entered into and constituted a part of the trust estate created by his will. It is claimed the residuary clause of the will is void because it suspends the absolute power of alienation for more than two lives in being at the creation of the estate, and because it violates the common-law rule as to perpetuities so far as it involves personal property.

Section 12934, 3 Comp. Laws 1929, provides:

"Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being, by whom an absolute fee in possession can be conveyed."

Section 12935, 3 Comp. Laws 1929, provides:

"The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section."

Section 12936, 3 Comp. Laws 1929, provides:

"A contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited shall die under the age of twenty-one years, or upon any other contingency by which the estate of such persons may be determined before they attain their full age."

In *Thatcher* v. *St. Andrews Church,* 37 Mich. 264, it is said:

"We think it is a self-evident proposition that the 'absolute power of alienation' is not suspended where the instrument gives the trustees power to dispose of the property at their option. Where power is given to convey the trust estate, the absolute power of alienation can in no possible way be said to be suspended."

In *Brewer* v. *Brewer,* 11 Hun (N. Y.), 147, affirmed in *Bremer* v. *Penniman,* 72 N. Y. 603, it is said:

"The only question to be determined on this appeal is whether such a trust is legalized and rendered valid by the power coupled with it, authorizing the trustees to sell the trust estate.

"This question has not been expressly adjudicated, perhaps, in this State, and may be said to be presented herein for the first time. The argument to sustain it is ingenious, but if it were successful it would validate trusts that have been declared prohibited and void.

"It is based on the proposition that section 14 of the article relating to the creation of estates declares distinctly what is meant by the suspension of the power of alienation, which is prohibited, namely, 'such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed,' and that the testa-

tor having conferred a valid power of sale, there is a person in being by whom an absolute fee in possession can be conveyed. The answer which seems to meet the question at once, and conclusively, is that the power of sale is possessed by persons in a representative capacity, and is discretionary and limited, because it is for the purposes of the trust only, or, in other words, to make a change in the character of the trust property for reinvestment, and therefore to continue the trust. The statute clearly means persons having an absolute and unqualified, unconditional fee by inheritance or by purchase, which can be conveyed absolutely, not only with reference to the subject of the conveyance, but to the product of its sale."

In *Palms* v. *Palms*, 68 Mich. 355, this court cited *Brewer* v. *Brewer, supra,* and *Hobson* v. *Hale,* 95 N. Y. 609, with approval, and *Palms* v. *Palms, supra,* was expressly approved in *Niles* v. *Mason,* 126 Mich. 482.

In *Dean* v. *Mumford,* 102 Mich. 510, it is said:

"Where a duty is imposed upon the executor which makes it necessary for him to retain the possession and control of realty, he will take an interest adequate to enable him to perform his duty; and an alienation which cuts off that right is, by implication, prohibited."

The same rule was followed in *Niles* v. *Mason, supra.* The cases supporting the rule of *Brewer* v. *Brewer, supra, Dean* v. *Mumford, supra,* and *Niles* v. *Mason, supra,* are collected in Chaplin on Suspension of the Power of Alienation (2d Ed.), p. 111; (3d Ed.), p. 206. The rule of *Brewer* v. *Brewer, supra,* is inherently sound. It was followed in *Dean* v. *Mumford, supra, Niles* v. *Mason, supra,* and *Grand Rapids Trust Co.* v. *Herbst,* 220 Mich. 321, and is sustained by the overwhelming weight of au-

thority. It limits the rule of *Thatcher* v. *St. Andrews Church,* above quoted.

"We have no statutes bearing on trusts in personalty, and, so far as trusts are concerned, they must be treated as they are by their nature required to be treated by other than statutory rules." *Penny* v. *Croul,* 76 Mich. 471 (5 L. R. A. 858).

That is by the rules of the common law. What is the common-law rule?

"The test of whether the rule against perpetuities applies or not is the remoteness of time when, if ever, the estate vests. The court must be able to say, to avoid the rule, that, to a certainty, the estate will vest within 21 years after the death of Stuart and Looe, and this vesting must be found to have been discernible at the date of the death of the testatrix. At that time Stuart and Looe were both living but had no children. Certainty as to time the estate will vest must be apparent, unaided by events subsequent to the date the will became operative. The dead hand can control contingent devolution toward ultimate vesting only within a fixed period." *Michigan Trust Co.* v. *Baker,* 226 Mich. 72.

"The test therefore by which to ascertain whether a limitation over is void for remoteness is very simple. It does not depend on the character or nature of the contingency or event on which it is to take effect, for these may be varied to any extent. But it turns on the single question, whether the prescribed contingency or event may not arise until after the time allowed by law within which the gift over must take effect.  *  *  *  It is not sufficient that the future estate may by possibility become vested within the period allowed by the rule against perpetuities or even that it will probably become vested in such period. If it may possibly happen

beyond the established time limits or if there is left any room for uncertainty or doubt on the point the limitation is void. If a future limitation may not by possibility take effect within the prescribed period it cannot be made good by subsequent events." 21 R. C. L. pp. 289, 290. *Michigan Trust Co.* v. *Baker, supra,* 77, 78.

"The rule stated more fully is as follows:

"First, subject to the exceptions hereafter mentioned every future estate or interest in any kind of property, the rights in which are governed by the law of England, must be such that, at the time when the instrument creating it comes into operation, it can be predicated that, if the estate or interest vests at all, it must necessarily vest not later than at the end of a certain period.

"Secondly, this period is the life of a person or the survivor of any number of persons in being at the time of creation of such future estate or interest, and ascertained for that purpose by the instrument creating the same, and 21 years to be computed from the dropping of such life; but if no such person or persons are ascertained by the instrument, the period is 21 years computed from the time of creation of the future estate or interest.

"In the following paragraphs this period is called 'the perpetuity period.'

"Thirdly, a child who is *en ventre sa mère* at the time of creation of an estate or interest, and is afterwards born alive, is deemed to be a person in being for the purposes both of the vesting of the estate or interest in him, and of being a life chosen to form the perpetuity period. The perpetuity period may, therefore, be apparently extended by a period or periods for gestation, but only in those cases where gestation actually exists. This branch of the rule is applied whether it is for the advantage of the unborn child or not.

"Fourthly, every condition subsequent which but for this rule would render void a validly created estate or interest is to that extent inoperative.

"Fifthly, any estate or interest which does not necessarily satisfy the above rule is void from its creation, and events, subsequent to the date of the instrument which, or subsequent to the death of the testator whose will, created the estate or interest, which in fact make the vesting take place within the perpetuity period, have no effect so as to make the estate or interest valid.

"Sixthly, the time of the death of the testator is deemed the time of creation of an estate or interest created by will; and the time of the execution of the instrument creating the power is deemed the time of creation of an estate or interest created by the execution of a power not tantamount to absolute ownership." 22 Halsbury's Laws of England, § 641, p. 302.

"The mixture of good and evil together makes the whole bad." *Wimbish* v. *Tailbois*, 1 Plowd. 38 (75 Eng. Repr. 63).

"Where a legal and an illegal trust are created by will, and so connected as to constitute one general scheme, so that the scheme must fail, if the one be retained and the other rejected, the legal trust must fall with the illegal one." *Rong* v. *Haller*, 109 Minn. 191 (123 N. W. 471, 806, 26 L. R. A. [N. S.] 825).

See, also, *Johnston's Estate*, 185 Pa. 179 (39 Atl. 879, 64 Am. St. Rep. 621); *In re Fair's Estate*, 136 Cal. 79 (68 Pac. 306); *In re Dixon's Estate*, 143 Cal. 511 (77 Pac. 412).

As said in *Palms* v. *Palms*, 68 Mich. 355, 380:

"The testator has placed it all in one trust, and subjected it to the same disposition. He has made no distinction, and I think it clear that we can make

none for him. If, therefore, the trust as to any portion of the will must fail because unauthorized, it must fail to both classes of property."

"A trust estate cannot be good in part and bad in part." *Coster* v. *Lorillard,* 14 Wend. (N. Y.) 265.

These principles are fundamental. Many cases supporting them are collected by Messrs. Kent and Cooley in their joint brief filed in *Palms* v. *Palms* above cited.

"Where realty and personalty are inseparably united in a trust scheme, the invalidity of the trust as to one species of property also destroys the same trust as to the other." 40 Cyc. p. 1420, note 54.

If the residuary trust created by the will is void as to the real estate it is void in its entirety. The real estate of the testator as well as his personal property were placed in the residuary trust. It is all made subject to the same disposition. The testator made no distinction between the control and disposition of his real estate and the control and disposition of his personal property, so far as such trust is concerned.

The rule against perpetuities is not a rule of construction, but a peremptory demand of law. It is not a test to determine intention,—its object is to defeat intention. Gray on Perpetuities (2d Ed.), § 629; *Hawley* v. *James,* 16 Wend. (N. Y.) 61; *Herzog* v. *Title Guaranty & Trust Co. of New York City,* 177 N. Y. 86 (69 N. E. 283, 67 L. R. A. 146); *Central Trust Co.* v. *Egleston,* 185 N. Y. 23 (77 N. E. 989); 1 Perry on Trusts (6th Ed.), § 390. The same may be said of the statutes, 3 Comp. Laws 1929, §§ 12934, 12935, prohibiting the suspension of the absolute

power of alienation for more than two lives in being at the creation of the estate.

The rule prohibiting the suspension of power of alienation for more than two lives in being and the rule against perpetuities are separate and distinct.

"It must be kept in mind that, while the rule against perpetuities applies to future interests in both real and personal property, it has nothing to do with the statutory prohibition against suspension of power of alienation. The rule requires vesting of estates within a period, while the statute prohibits inalienability beyond a period; the rule is a restraint only upon future interests and has no concern with present interests; the statute reaches vested estates in real property but shorn of alienability. With title to the real estate vested in the trustee with power and mandate to sell, the character of the avails thereof is fixed by the will as personal property." *Michigan Trust Co.* v. *Baker, supra.*

See, also, *Thatcher* v. *St. Andrews Church, supra.*

It is contended this case is governed by *Gettins* v. *Grand Rapids Trust Co.,* 249 Mich. 238. That case went to the verge of judicial discretion in upholding the will of the testator. It was there said:

"It is conceded that this trust provision respecting surviving issue of Belle violates both the statute against restraints on alienation and the rule against perpetuities (*Michigan Trust Co.* v. *Baker, supra*) in that 'there is a mere possibility that there are no persons now in being, by whom an absolute fee in possession of this trust estate can be conveyed, and that alienation may by mere possibility be suspended for a period longer than two lives in being.'

"In applying the rule against perpetuities, Belle Gettins, although now childless and 52 years old, must be considered as capable of having issue as long as she lives. *Rozell* v. *Rozell,* 217 Mich. 324.

"The question before us is: May we lop off the invalid trust provision and permit the rest of the will to stand, or must we hold the entire will void because of such provision? To hold the will void is to defeat completely testatrix's whole plan of distribution of her property, which she had right to dispose of as she pleased. We may and should (eliminating the invalid trust provision) sustain the remainder of the will if in doing so we do not violate the general plan and scheme of testatrix, if we do not in effect make a will for her. *Rozell* v. *Rozell, supra.*"

Either this will is void or the court, in defiance of the will, contrary to the expressed intention of the testator, must enter the field of speculative probability and construct for the testator a will he never dreamed of and never declared to be his last will and testament. There is a clear distinction between the rule applied in *Gettins* v. *Grand Rapids Trust Co., supra,* and that applied in *Burke* v. *Central Trust Co.,* 258 Mich. 588; and *Michigan Trust Co.* v. *Baker, supra.*

"A distinction is to be observed between schemes which were obviously intended to constitute a single entity and must stand or fall on their merits as a whole, and those which may be separated into wholly independent dispositions. If a provision of the former character involves an unlawful suspension, or postponement, the whole scheme falls to the ground, while if the taint of illegality attaches only to a wholly independent part of an entire scheme, this tainted part may be cut off and the rest allowed to stand." Chaplin, Suspension of the Power of Alienation (2d Ed.), p. 290.

"The statute is like a tyrant, where he comes he makes all void." *Maleverer* v. *Redshaw,* 1 Mod. 35 (86 Eng. Repr. 712).

When the provisions (of a will) are ascertained and understood then is their legality to be determined. *Central Trust Co.* v. *Egleston, supra.*

"When we have ascertained what particular disposition the testator intended to make of his estate, then, and not before, the question arises whether the will is valid. If the disposition actually made is not inconsistent with the rules of law, the will is good and must be carried into effect. * * * On the other hand, if the disposition actually made is contrary to law * * * the will is worthless and we have no choice but to declare it void." *Hawley* v. *James, supra.*

"It would be arbitrary, and establish a precedent for courts, not to construe wills according to the intent of the testator as derived from a consideration of the language used to express it; but to make a will for him, such a one as we undertake to presume he would have made, if advised that his own was void as against law. This I cannot consent to do. Better that the intent of the testator should fail in a particular case, than that the court should assume such arbitrary and undefined discretion over his estate. If we cannot execute the whole will, or some distinct and independent intent, the whole had better be declared void. The law makes a better one than will usually be made by the court." *Coster* v. *Lorillard, supra.*

"We cannot make a new will or build up a scheme for the purpose of carrying out what might be thought was or would be in accordance with his wishes." *Tilden* v. *Green,* 130 N. Y. 29 (28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487).

"It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. While recognizing the force of this truth courts have from the earliest times been compelled to choose between the alternatives of set-

ting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established in this State, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the whole must fail altogether." *Kalish* v. *Kalish,* 166 N. Y. 368 (59 N. E. 917).

"The will sought to give bread, but legislation has turned it to a stone, and still it is insisted that it shall be forced upon the children of the testator without regard to its change of quality. * * * Unless we can carry out the real intentions of the testator, I can discover little justice or utility in mocking his descendants by the mere scraps of his will, which have not been reached by legislative enactments. The whole beauty and harmony of this will is broken down by the strong arm of written law. We are not permitted to refashion it after the plan of its projector; but can only gather up the disjointed fragments, and unite them with judicial cement. * * * This patrimonial tree offered shelter and shade to the children of the testator. Its foliage has been withered, and its branches lopped off by the omnipotence of legislation; but they are pointed to its naked and sapless trunk and there invited to seek repose and protection. The whole life and spirit of the will has departed, and the effort to resuscitate it by judicial power, will be as unavailing as an attempt to 'back to its mansion call the fleeting breath.' * * * We cannot warm it into life and being, nor reinvigorate it with the soul breathed into it by the testator; but as an inquest to declare the cause of its death, we should pronounce it to be that of legislative visitation." *Root* v. *Stuyvesant,* 18 Wend. (N. Y.) 257, 317.

"I am unable to discover how we can execute this will in any substantial, distinct or independent provision. If executed at all, it must be at war with the spirit of the testator's intent, as indicated by

the whole tenor of the will, and every fact and circumstance connected with it, either immediately or remotely. I cannot consent to force the mere language of the testator upon his heirs, when the object to which it relates has been placed beyond their enjoyment; or to go through the idle ceremony of pretending to execute his will, when we are compelled to pronounce everything of a substantial character void. * * * In this case, it is better that the testator's property should descend to his heirs, according to the just and equitable principles of the statute of descent, than that a will should be patched up for him which would both defeat his intentions, and leave his heirs destitute in the midst of abun--dance.'' *Root* v. *Stuyvesant, supra,* 318.

The evident intention of testator was to give his residuary estate to trustees, with directions to divide the trust estate into two equal shares which shares were to consist of both real and personal property; to provide that these separate shares or divisions should be treated by his trustees separately; that title to none of the trust property should vest absolutely in any one until a child of his daughter Alene or of his daughter Natalie should attain the age of 25 years, and such child may possibly not yet be in being.

Undoubtedly an object of the testator was to give the bulk of his estate to trustees so his daughters would have the use and benefit, each of one-half of it during their natural life, but the paramount object of the testator was to project his will into the future, to suspend the absolute power of alienation of his real estate beyond the period prescribed by statute and to prevent the vesting of absolute title to his personal property beyond the period fixed by the rule against perpetuities; to bind his real estate and personal property all together, regardless of

its character, into one trust, and by his will to direct the control of the trust estate, and direct its ultimate distribution to his grandchildren presently in being or who might prospectively come into being, who when they severally and respectively should reach the age of 25 years should receive one-half of their respective shares and when each and all his grandchildren born or yet to be born should reach the age of 30 years then and not till then could his trust estate vest absolutely.

Though the rule against perpetuities and the rule against suspension of the power of alienation are separate and distinct, as pointed out by Mr. Justice Wiest in *Michigan Trust Co.* v. *Baker, supra,* they both declare a rule of policy, the prevention of property being taken out of trade and commerce, and so tied up by the dead hand of the testator, that it cannot be conveyed, and the title thereto cannot vest absolutely, until the lapse of a long period of time. *Ford* v. *Ford,* 80 Mich. 42; *Edgerly* v. *Barker,* 66 N. H. 434 (31 Atl. 900, 28 L. R. A. 328). Both rules are aimed to stimulate commercial activity, to make capital active, by making it available for use. The testator, by his will, attempted to prohibit the vesting of absolute title to his residuary estate during the lifetime of his two daughters, and during the first 25 years of the lifetime of any of his daughters' children, three at least, the children of his daughter Alene, are now in being, and with probable presumptive prospects she may have other children and that his daughter Natalie may in the future have children. It is commendable to attempt to carry out the will of the testator but it is just as commendable to vindicate the law which testator's will clearly violates.

We cannot lop off a part of this trust. We cannot make a new will for the testator. Should we hold

void that part of the trust provisions of the testator's will as violates statutes on restraints on alienation and the rule against perpetuities, and uphold as valid the balance of the will, we will make a will for the testator. His property will pass according to the terms of our will, not in accordance with his will. In all reasonable probability the will so remade would be such a one as the testator never contemplated, never considered, never intended to make, and which, had it been suggested to him in his lifetime he should execute, would have been repudiated and condemned. His property ought not to be made to pass in a manner he never intended it should pass, by a will made by the court and not by him. Rather it should pass by law.

The decree of the trial court is reversed and a decree will be entered setting aside and holding void the trust provisions of the will in question. Costs to be a charge against the estate.

NELSON SHARPE, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.